## Case No. 1,313.

### In re BENNETT.

[2 Hughes, (1877,) 156;[1] 12 N. B. R. 257.]

Circuit Court, D. South Carolina.

BANKRUPTCY—ASSIGNEE—RECEIVER — MORTGAGEE
IN POSSESSION.

1. After the appointment of an assignee in bankruptcy, a receiver should not be appointed of the lands of the bankrupt lying under mortgage, the assignee being clothed by law with like functions to those of a receiver.

[See Myers v. Seeley, Case No. 9,994.]

2. Under the statute law of South Carolina relating to the rights of mortgagees in mortgaged lands, of which the mortgagors are out of possession, the register's assignment to an assignee in bankruptcy of the bankrupt's estate, where lands covered by mortgage are embraced, will be construed as putting the mortgagee out of possession, and as giving the mortgagee the same rights as to rents and profits, if he make claim to them, which he could have acquired by actual entry had there been no assignment of the lands in bankruptcy.

[Appeal from the District Court of the United States for the Eastern District of South Carolina.

[In bankruptcy. Petition by Mrs. Bennett, mortgagee of real estate of I. S. K. Bennett, a bankrupt, claiming the rents and profits after the adjudication of bankruptcy. From a decree of the district court sustaining exceptions by the assignees to a master's report, the mortgagee appeals. Decree modified.]

WAITE, Circuit Justice. The material facts of this case, as found by the special master, are as follows:

I. S. K. Bennett was adjudicated a bank-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

rupt, October 8th, 1872, upon a creditor's petition filed July 31st, of the same year. Soon afterwards assignees were elected and qualified. The estate of the bankrupt consisted almost exclusively of twelve parcels of land lying in Charleston, Colleton, Georgetown, and York counties. The South Carolina Loan and Trust Company held a first mortgage upon two of these parcels, and the estate of one Payne a similar mortgage upon a third. Subject to these liens, Mrs. Bennett, the mother of the bankrupt, held a mortgage on the twelve parcels. One Sanders had a mortgage behind that of Mrs. Bennett upon the land in York county, and there were several judgment creditors whose judgments constituted liens upon that in Charleston county. The Loan and Trust Company had a suit pending in state court (to which Mrs. Bennett was a party) for the foreclosure of its mortgage, and the lands in Charleston county were advertised for sale under executions issued at the instance of the judgment creditors upon their judgments, when the petition in bankruptcy was filed. At that time and for some time afterwards, all parties interested believed that the real estate when sold would realize more than enough to satisfy all the incumbrances upon it.

On the 8th of November, 1872, the assignees having taken the real estate into their possession, filed in the district court their bill in equity against all the lien creditors, setting forth the nature and character of each lien, and the conflicting interests in respect thereto, and asking that the rights of the respective parties might be adjudicated in that suit; that the property might be sold free from all incumbrances, and that further ex parte proceedings by the several lien creditors might be enjoined. The injunction asked for was granted, and all the defendants subsequently answered. Mrs. Bennett filed her answer March 1st, 1873, in which she asserted the validity of her mortgage, and claimed that "under skilful management the estate of the bankrupt could be made to pay all his debts in full and leave a surplus for the benefit of himself and family." She made no claim to the rents and profits of the land, and did not ask to have them subjected to the payment of her mortgage debt. The several judgment creditors in their answers attacked the validity of Mrs. Bennett's mortgage. Testimony was taken, and, on the 21st May, 1873, a decree was entered, with the written consent of all parties, directing a sale of the entire property by the assignees; that the costs be paid out of the proceeds of the sale, and "that the assignees pay all and any taxes, charges, and assessments upon said several premises out of the proceeds of the sale, * * * and likewise apportion and retain the commissions to which they may be properly entitled, and that they hold the surplus subject to the further order of the court." Under this decree

the property has been sold, but the proceeds are not sufficient to pay in full the amount due upon the mortgage of Mrs. Bennett.

On the 30th May, 1873, Mrs. Bennett filed her petition in the district court in which she claimed that she was lawfully entitled to receive the rents and profits of the real estate covered by her mortgage from and after the 8th October, 1872, the date of the adjudication in bankruptcy. A rule was thereupon made upon the assignees to show cause why the rents and profits received by them, after deducting any amount due for taxes, should not be paid to her, and why they should not account to her for rents and profits which they might thereafter collect. To this rule the assignees made a return. The whole case was then referred to Samuel Lord, Jr., as special master, "to inquire and report what costs, expenses, and counsel fees are due and unpaid, in the matter of the bankrupt's estate, whether general or special; and further, to report out of what funds in the hands of the assignees the same should be paid; with leave to report any special matter."

The master reported that the rents and profits which had been received by the assignees after November 8th, 1872, the date of the filing of the bill to adjust the rights and priorities of the lien creditors, belonged to Mrs. Bennett, and could not be applied to the payment of any other counsel fees and expenses than such as were incurred for the benefit of that fund. To this part of the report the assignees excepted. The district court sustained the exception, and held that all the rents and profits collected by the assignees, were assets in their hands for the payment of the general creditors and not part of the mortgage security. The case is now here to obtain a review of this ruling of the district court.

By an act of the general assembly of South Carolina, passed in 1791, (5 St. 170,) it was provided as follows: "Sec. 2. That no mortgagee shall be entitled to maintain any possessory action for the real estate mortgaged, even after the time allotted for the payment of the money secured by the mortgage had elapsed; but the mortgagor shall still be deemed the owner of the land and the mortgagee the owner of the money lent or due, and shall be entitled to recover satisfaction of the same out of the land in the manner above set forth (sec. 1); provided, always, that nothing herein contained shall extend to any suit or action now pending, or when the mortgagor shall be out of possession." Rev. St. p. 536, c. 116, § 1. Under this statute it has been held that when the mortgagor is "out of possession," the rights and remedies of a mortgagee are the same as at common law, and that he is "out of possession" when he has made an absolute conveyance of the mortgaged property in fee and his grantee has gone into possession.

Durand v. Isaacks, 4 McCord, 56; Stoney v. Shultz, 1 Hill, Eq. 468; Matthews v. Preston, 6 Rich. Eq. 307; Mitchell v. Bogan, 11 Rich. Law, 688; Laffan v. Kennedy, 15 Rich. Law, 257. In the case last cited, "the court holds that when there is a mortgage in fee, the mortgagor, whilst he retains the fee, is not deprived of the ownership of the land and the rights incident thereto by the temporary occupation of a tenant who holds under him." This goes as far as any case has gone in limiting the operation of the words of the act, and by the strongest implication concedes that if the fee is conveyed the required possession is gone.

The assignment in this case, under the operation of the bankrupt act, transferred the fee to the assignees. Bennett had no longer any estate in the mortgaged property. Whatever right he had was then absolutely conveyed and his grantees went into possession, not as his tenants but as owners. It is true that this conveyance may not have been voluntary, and that in one sense it was by operation of law, but it is equally true that its effect was to divest the mortgagor of his title and possession and place them both in the assignees. This is the legal effect of the adjudication of bankruptcy, the appointment and qualification of the assignees, and the official assignment by the register or judge. It is a conveyance by the bankrupt in the same sense that the deed of a sheriff after judgment, execution, levy, and sale by him is a conveyance by the judgment debtor. In the one case the register or judge, and in the other the sheriff, is made by law the agent of the owner to convey. When, therefore, the assignment was made, the bankrupt mortgagor was out of "possession," and Mrs. Bennett became invested with all the rights and powers of a mortgagee at common law. As such, she could obtain the possession of the mortgaged property by an appropriate possessory action at law, or subject the accruing rents and profits of the land to the payment of her mortgage by a proceeding in equity. She could also, upon proper demand and notice, require tenants in possession to pay their rent to her, but she could not bring the mortgagor or his assignees to an account for profits arising from their own use and occupation, or for rents actually received by them from their tenants before entry was made or demand and notice given. These are familiar principles both in and out of South Carolina, (Matthews v. Preston, supra; Ex parte Wilson, 2 Ves. & B. 252;) and it was conceded by the counsel for the assignees upon the argument, that they are applicable to this case, if the parties occupy the position towards each other of mortgagor and mortgagee at common law. The theory is, that until the mortgagee actually intervenes to assert his right to the profits of the land, they may be rightfully received and appropriated by the mortgagor and those to whom he assigns. The unqualified assent by

the mortgagee to the possession by the mortgagor or holder of the equity of redemption is equivalent to a license to occupy and to enjoy all the benefits of the occupation. Until this license is revoked, the possession is lawful, and he who is in under it cannot be charged as a wrongdoer. It is for this reason that, according to the weight of authority, a recovery of the possession by the mortgagee from the mortgagor or one holding under him in ejectment, only carries with it the right to recover mesne profits from the time of notice by the mortgagee to quit, or in the absence of such notice or its equivalent, from the time of the commencement of the action of ejectment. Sanderson v. Price, 1 Zab. [21 N. J. Law,] 637; Notes to Moss v. Gallimore, 1 Smith Lead. Cas. 926–941, [315–318.][2] Possession with the consent of the mortgagee is not wrongful, and damages for detention cannot be recovered until such consent has been in some form withdrawn.

It remains only to apply these principles to the facts of the present case. Mrs. Bennett, having become by the operation of the assignment a mortgagee at common law, and the assignees being only the owners of an equity of redemption after condition broken, had the right to proceed at once to subject the accruing rents and profits of the land to the payment of her debt. For this purpose all the remedies known to the law in such cases were open to her. This right was one of the incidents of her mortgage. She might exercise it or not as she chose. If she lay by and without objection permitted the owner of the equity of redemption to appropriate the profits of the land to his own use, her power over such as he appropriated was gone. Until she acted her right was dormant. It only had effect when it was exercised.

The assignee in bankruptcy is especially the representative of the unsecured or general creditors. He is not the agent or representative of secured creditors who do not in some form make themselves parties to the bankruptcy proceedings. He cannot deprive a secured creditor of the benefit of his security, neither is it any part of his duty to enforce the security rights of such creditor. To charge him as the agent or representative of such a creditor for such a purpose, it must in some form appear that he has been specially required to perform that duty. When the assignees took possession of these lands, they took it for the benefit of the general or unsecured creditors. They had become the owners of the equity of redemption of a mortgagor in possession. They succeeded to the rights of such an owner and became entitled to all the benefits and advantages of such a possession. This gave them the right to receive and appropriate without liability to account, the rents and profits of the land until such time as

[2] [From 12 N. B. R. 257.]

the mortgagee made claim to them under her mortgage. When so collected they at that time inured to the benefit of the unsecured creditors. The possession of the assignees was then in no sense that of the mortgagee. It was that of a mortgagor with the assent of the mortgagee. It seems clear, therefore, that Mrs. Bennett is not entitled to the rents collected before the time of the filing of the bill by the assignee to adjust the rights of the lien creditors. They were received by and for the owners of the equity of redemption without objection from her as mortgagee. It does not appear from anything in the case, as it is presented, that the ownership of the rents and profits was in any manner brought to the consideration of the court under the bill filed by the assignees, or that the collections made pending that litigation were by virtue of any authority derived from that suit. The assignees, being rightfully in possession, asked to have the rights of the several parties adjudicated and the lands sold. They did not surrender the possession or control of the land to the mortgagee or the court, neither did they ask the court to determine who should be entitled to the rents collected during the pendency of the litigation. All parties interested were called in, and while they were enjoined from commencing any other suit for the adjudication of their rights, there was nothing to prevent them from presenting all their claims and having them adjudicated in that. Mrs. Bennett could not commence a possessory action, and thus avail herself of the use of the land, but she could assert in that suit her right to the accruing rents and have them adjudicated to her. This she did not do, but permitted the assignees without objection to continue in the enjoyment of all the advantages which resulted from their possession with her consent. The decree ordered the sale of the lands, but did not adjudge the rents to the mortgagee. The case is not different in effect from what it would have been if Mrs. Bennett had filed her bill against the assignees in possession to foreclose her mortgage and neglected to take the necessary steps to reach the rents pending the litigation. It matters not that she was required by the assignees to assert her rights, for when she did come in and did present her claim she became an actor, and was entitled to the same relief she would have had if she had herself originally instituted the suit. In Boyce v. Boyce, 6 Rich. Eq. 318, which is supposed to give her the rents collected pending the litigation, the fund did not come into the hands of the administrator until after the mortgagee had asserted his claim to it in a suit where the administrator brought the whole of an insolvent decedent's estate into court and called upon all creditors and claimants to present their demands and have the order of their payment adjudicated. It presented, therefore, a case in which an attempt was made to reach rents and profits

before they had come into the possession of the mortgagor.

For these reasons, I am clearly of the opinion that the bill filed by the assignees, and the proceedings under it, did not have the effect of subjecting the rents thereafter collected to the satisfaction of Mrs. Bennett's mortgage. But on the 30th May, 1873, she did file in the bankrupt court a formal demand, and asserted her right to have the rents applied upon her mortgage. According to Matthews v. Preston, 6 Rich. Eq. 307, at common law "the implied authority of the mortgagee to receive and appropriate the rents and profits might be terminated at the will of the mortgagor. He had only to notify the tenant of his mortgage and demand the payment of the rent to himself (both as to that which is in arrear and to that which is to accrue) to render any subsequent payment to the mortgagor illegal. After such notice, the mortgagor might maintain his action at law for the rent, or he might resort to the more summary proceeding by distress under the law of landlord and tenant." The assignees in bankruptcy administer the estate of the bankrupt as officers of the court. The court in effect takes the property into its own possession and holds it for the creditors and claimants according to their respective rights. Until Mrs. Bennett asserted her claim to the rents the possession in this case was for the general creditors, who were the beneficial owners of the equity of redemption, and the rents when collected followed this ownership. The general creditors occupied the position of owners of the equity of redemption in possession with the consent of the mortgagee. But when Mrs. Bennett demanded the rents this consent on her part was withdrawn, and, under the ruling in Matthews v. Preston, the further payment to the general creditors or for their account became illegal. Thenceforward the court held and received for her account, not theirs.

There was no necessity for the appointment of a receiver, because in legal effect the assignees already occupied that position. They were acting for the benefit of whom it might concern. They received and held the rents for such persons as should for the time being be entitled thereto. According to Matthews v. Preston, a mere notice to a tenant and demand of the rent terminated the authority of the mortgagor to receive and appropriate, and at the same time transferred the ownership to the mortgagee. In order to put an end to the authority of a mortgagee to collect the rents, it is only necessary for the mortgagor to manifest his intention so to do. For this purpose, according to Bank of Washington v. Hupp, 10 Grat. 28, "slight acts will be deemed sufficient;" and in Boyce v. Boyce, where, as here, the mortgaged property was in court, a claim for the rents made to the court by a party to the suit in the progress of the cause was all that was required. As the court has the property and the parties all within its ju-

risdiction, it has the power to adjudicate upon all conflicting claims. I am, therefore, of the opinion that the rents collected after May 30th, 1873, are applicable to the payment of any balance that may remain due upon the mortgage of Mrs. Bennett after exhausting the proceeds of the sale of the land, and that the order of the district court must be modified accordingly.

Mrs. Bennett asks that the taxes upon the lands due previous to May 30th be paid out of rents collected before that time. That question is not now open, inasmuch as by the decree of May 21st, entered by the consent of all parties, it was ordered that the taxes be paid from the proceeds of the sale of the lands. The report of the special master is in all respects affirmed, except as hereinbefore indicated.