Littlejohn vs. Turner and another, Ex'rs, etc.

======================

LITTLEJOHN, Respondent, vs. TURNER and another, Executors, etc., Appellants.

*November 15 — December 4, 1888.*

VOLUNTARY ASSIGNMENT. *(1) Waiver of irregularities by filing claim. (2, 3) Sale of assigned property free from incumbrances: Jurisdiction: Collateral attack upon order.*

1. In the absence of fraud a creditor who files his claim in the manner prescribed by law thereby waives all objections to the regularity of the assignment and to the title of the assignee to the assets.
2. The court may, under sec. 1693, R. S., in a proper case, authorize the assignee to sell the assigned property free from all incumbrances.
3. One who had notice of the application for an order authorizing the sale of the assigned property free from incumbrances, but failed to appear and object, or, if he did object, has taken no steps to have the order set aside or reversed, cannot attack it in a collateral proceeding, except for fraud.

VOL. 73 — 8

APPEAL from the Circuit Court for *Waukesha* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The plaintiff brought this action in the circuit court, for the purpose of perpetually enjoining the sale of certain real estate, owned by him, upon an execution issued upon a judgment in favor of the defendants' testator, Elijah Gove, deceased, against one Benjamin Boorman, and to have the court adjudge that such judgment was not a lien upon said real estate.

The facts in the case, as claimed by the defendants, are substantially as follows: On May 5, 1883, Benjamin Boorman was indebted to said Elijah Gove $900 on two promissory notes then due. On that day said Gove commenced an action against said Boorman upon said notes, in the circuit court of Waukesha county. In said action, an attachment was issued, and upon such attachment the real estate now claimed to be owned by the plaintiff in this action was lawfully attached. On May 31, 1883, judgment was duly entered in said action, in favor of said Gove, for the sum of $1,011.46. In 1884, the said plaintiff, Gove, died; and the appellants, *Turner* and *R. L. Gove*,— the executors of the last will of said deceased,— were substituted as plaintiffs in said action; and on the 8th of January, 1885, execution was issued upon said judgment and placed in the hands of the sheriff of said county of Waukesha, who advertised the property so attached in said action for sale to satisfy such judgment. The foregoing facts, showing the claim of the defendants, *Turner* and *Gove*, as executors, etc., against the property in question, are not disputed, and are verities in the case.

The facts upon which the plaintiff, *Littlejohn*, relies to defeat this claim of said executors, are substantially as follows:

On the 4th day of May, 1883, the said Benjamin Boor-

man conveyed the real estate, which was attached in the action of said Gove on the 5th of May, 1883, to one Chester A. Blodgett, in trust, to sell the same and pay off certain liens then existing on the same, and, after paying said liens, if there was any surplus, to distribute the same equally among the other creditors of said Boorman. On the 19th of May, 1883, the said Benjamin Boorman made a voluntary assignment of all his property, both real and personal, including the real estate mentioned and described in said trust deed, to said Chester A. Blodgett as assignee; and under this assignment the said assignee took possession of all the property of said Boorman, including the real estate in question in this action. The proper schedules of credit-itors and assets were made by the said assignee under said assignment. In the schedules of assets, the real estate in question in this case was included; and the debt due to said Elijah Gove was included in the schedule of the liabilities of the assignor. On the 15th of August, 1883, the said Elijah Gove, by his agent and attorney, Eugene S. Turner, filed proofs of the claim of said Gove against said Boorman with the clerk of the circuit court of Waukesha county, in said assignment proceedings. The proofs of this claim show the nature of the indebtedness, and state the fact that judgment had been recovered on said claim by said E. Gove against said Boorman on the 31st day of May, 1883, in the circuit court of said Waukesha county, stating the amount of the judgment, including the costs; but such proofs of claim made no mention of the fact that the real estate of the defendant Boorman had been attached in such action, or that said Gove claimed any lien, by attachment or otherwise, upon any of the property, real or personal, which had been assigned by said Boorman to his assignee, Blodgett.

On the 18th day of December, the said Chester A. Blodgett, as assignee of the estate of the said Boorman, presented to the circuit court of Waukesha county a peti-

tion setting forth the fact that said Boorman had made a voluntary assignment of all his property to him for the benefit of all his creditors; that he had duly accepted the trusts of such assignment; that among the property of said Boorman so assigned to him was the real estate in controversy in this action; and that in the discharge of his duties as assignee he had executed a written contract with the said *N. M. Littlejohn*, to sell him the property known as the Saratoga Flouring-Mills, with the water power thereunto belonging, and particularly describing the same, for the sum of $17,000 in cash or the equivalent. This flouring-mill property is the property in controversy in this action.

The petition then sets forth that the assignee has made diligent and honest endeavors to sell said property, for nearly seven months; and has endeavored to find a purchaser for said property at the sum of $25,000,— the value fixed upon said property in the inventory of assets mentioned in said assignment proceedings; and sets forth particularly the means he has resorted to, to find a purchaser for said property; that he has been unable to find a purchaser at the price of $25,000; that the highest offer he has received for said property,— other than the offer of $17,000 made by said *Littlejohn*,— is $15,000. The petition then alleges that $17,000 is the highest sum that can be obtained therefor, and in his opinion is the full value of said property. The petition also sets up the fact that said property is mortgaged to the Waukesha National Bank for the sum of $15,000, which said mortgage was due and unpaid, and that in order to prevent a threatened foreclosure of said mortgage the said assignee had, on October 15, 1883, paid the interest due thereon to said mortgagee, amounting to the sum of $462.94; that said payment of interest was made out of the net profits made by the petitioner in running said mill, as assignee; and asks the court to approve of such payment. The following is the prayer of the peti-

tion: "Wherefore, your petitioner submits the matter of said sale of said property to this court; and prays that, upon the considerations aforesaid, the said court may confirm said sale and authorize, by its order and decree in said matter to be made, your petitioner to make and execute a conveyance of said property in accordance with the terms of said contract so made as aforesaid with said *N. M. Littlejohn*, and, out of the consideration therefor, to pay and discharge all mortgages and uncontested liens and incumbrances against said property, retaining the residue therefor — if any — to be disposed of according to law; and for such other and further relief as in the premises may be just and proper."

Upon filing this petition, the following order was made by the court:

"CIRCUIT COURT, WAUKESHA COUNTY, STATE OF WISCONSIN.
"*In the Matter of the Voluntary Assignment of Benjamin Boorman, of Waukesha, in Said County.*

"On reading and filing of the petition of Chester A. Blodgett, the assignee of the above-named Benjamin Boorman, in this matter, representing among other things that it is advisable that said assignee be authorized to sell and convey certain real estate of the assets of said assignor, to wit, 'the Saratoga Flouring-Mills,' so-called, in the village of Waukesha in said county, with the water power thereto belonging and with which said mills are being operated; that the said real estate was appraised in the inventory of the assets of said Boorman at the sum of $25,000; that the said assignee is offered the sum of $17,000 for the said real estate, and has entered into a contract with *N. M. Littlejohn* to convey the same to him for said sum of $17,000 if this court shall approve of such conveyance,— therefore, it is hereby ordered, on the application of said assignee, that the said petition be heard before this court, at the court-house in said county, on the 26th day of December,

instant, at four o'clock in the afternoon of that day, or as soon thereafter as the parties can be heard; and it is further ordered that notice of the time and place of such hearing be made known to all the creditors of said Benjamin Boorman, by mailing to each such creditor, addressed to his post-office address, a copy of this order.

"A. SCOTT SLOAN, Judge.

"*Dated, December 18, 1883.*"

Proof of the service of this order as required therein was made by the affidavit of Andrew J. Frame, which affidavit was filed in said court.   On the day fixed for the hearing of said order to show cause the court made the following order: " On reading and filing the above and foregoing petition, and on motion of Alex. Cook, attorney for the assignee, it is ordered that the said assignee of Benjamin Boorman accept the offer of *N. M. Littlejohn* to purchase the property, as stated in the foregoing petition, for the sum of $17,000 in money, free and clear of all incumbrances.   And it is further ordered that, on the payment of said sum, the said assignee execute, acknowledge, and deliver to said *N. M. Littlejohn*, his heirs or assignee, any and all deeds and writings necessary and proper to carry out the said offer; and upon the payment of the said sum of $17,000 and the execution and delivery of all necessary papers, writings, deeds, or conveyances, the said assignee forthwith and immediately deliver to said *N. M. Littlejohn* the possession and control of all the property referred to in the contract, heretofore referred to in the foregoing petition, and hereby ordered to be sold; and on the terms and conditions of said contract with said *N. M. Littlejohn* being fully carried out, the said sale shall in all things be fully confirmed; and out of the proceeds of the said sale the assignee is directed, *first*, to pay the taxes now payable on said mill property, and to pay to said Waukesha National Bank the sum due to it for the principal and interest and insurance paid, including

said sum of $462.94 interest, paid by him October 1, 1883, and all other uncontested liens upon said property; *second*, to retain in his hands a sufficient sum — if the same shall be sufficient — to pay the costs and expenses of the execution of his trust as such assignee to this time; *third*, to dispose of the balance (if any) according to law, the interest of the creditors of said Benjamin Boorman. *December 27, 1883.* A. SCOTT SLOAN, Judge."

After the making of this order, the assignee conveyed, by his deed, the property in question in this action to the said *N. M. Littlejohn;* and in said deed he made the following covenant: " And the said party of the first part, as such assignee and trustee as aforesaid, does, on behalf of said Benjamin Boorman, and of the creditors of said Boorman, and of himself as such assignee and trustee as aforesaid, covenant, grant, bargain, and agree to and with the party of the second part, his heirs and assigns, that, at the time of the ensealing and delivery of these presents, he is well seized of the premises above described, as such assignee and trustee as aforesaid, and that he has good right and lawful authority to make, execute, and deliver this conveyance, by the order and determination of the circuit court in and for said county of Waukesha in that behalf duly made and entered of record in said court."

None of the foregoing facts were disputed by the defendants, except the alleged fact that the deceased, Elijah Gove, had notice of the application made by the assignee to sell the property in question. Upon this question, the learned circuit judge found that he had notice of such proceedings; and, although the fact is disputed by the defendants, we think the finding is supported by the evidence. The circuit court, upon the trial of this action, found all the facts above stated, and, in addition thereto, found that the sum of $17,000 was a full and fair value and consideration for the property sold; and that at the time of such sale the

uncontested liens upon such property which were prior to the lien of the appellants upon the attachment in the case of Gove against Boorman, amounted to the sum of $17,500 or thereabouts; and that the assignee procured the satisfaction and discharge of all said liens for the said sum of $17,000, and that the said $17,000 was applied to the satisfaction of said claims with the approval of said court. The said court also finds that, immediately after the conveyance to him by said assignee, the said *N. M. Littlejohn* entered into the possession of said premises, and had, in good faith, made permanent improvements upon said property of the value of over $22,000.

And, as conclusions of law, the court finds as follows: "*First.* That the sale and conveyance of the premises described in the complaint and known as the 'Saratoga Flouring-Mill Property,' by the assignee, under the order of the court, 'free and clear of all incumbrances,' passed the title thereto to the plaintiff, divested of any lien the defendants or either of them had by virtue of the said judgment. *Second.* That a sale of said premises under said judgment as threatened, and the filing of a certificate thereof, would create a cloud on plaintiff's title. *Third.* That the plaintiff is entitled to the judgment of this court, establishing his claim to said premises against the claim of the defendants or either of them, and restraining the sale thereof. *Fourth.* That the plaintiff is entitled to the judgment of the court that the defendants, or each of them, be enjoined and restricted from making any sale of said premises under or by virtue of said judgment or execution against Benjamin Boorman. *Fifth.* That the plaintiff's claim to said premises be established against any claim of the defendants or either of them, and they be forever barred against having or claiming any right or title to the said premises adverse to plaintiff. *Sixth.* That the plaintiff is entitled to a judgment against the defendants for his costs and disburse-

ments therein.    Judgment is therefore ordered for the plaintiff accordingly."

From the judgment entered upon these findings, the defendants appeal to this court.

For the appellants there was a brief by *Eugene S. & W. J. Turner*, attorneys, and *Harvey G. Turner*, of counsel, and a supplemental brief by *W. J. Turner*, and the cause was argued orally by *W. J. Turner* and *Eugene S. Turner*.

For the respondent there was a brief by *Weeks & Steele*, and oral argument by *T. D. Weeks*.

TAYLOR, J.    The learned counsel for the appellants claim, first, that the assignment is void because one of the sureties to the bond of the assignee was a practicing attorney in the courts of this state.

We think the undisputed evidence in the case shows that the appellants are not in a position to contest the validity of the assignment in this action.    It seems to us very clear that Elijah Gove, in his life-time, presented his claim against the assignee, in the assignment proceedings, in the manner required to entitle himself to any dividends which might arise from the assets in the hands of the assignee; and by doing so he admits the regularity of the assignment and the right of the assignee to the assets of the assignor.    This, we think, is well settled by the authorities cited below.    In determining this question against the claim of the counsel for the appellants, we do not intend to decide that, by presenting and proving his claim, without referring to or reserving, in such presentation and proofs, his alleged lien upon the assigned property or any part thereof, he thereby waives such lien.    All we decide is that, having come in under the assignment proceeding in such a way as to entitle himself to share in the dividends arising from the assets in the hands of the assignee, he waives all objection to the title of the assignee to such assets.    *Ansonia B. & C. Co. v. Babbitt,*

74 N. Y. 395; *Cavanagh v. Morrow*, 67 How. Pr. 242; *May v. Wannemacher*, 111 Mass. 202; *Pierce v. O'Brien*, 129 Mass. 314; *Jones v. Tilton*, 139 Mass. 418; Burrill on Assignm. (5th ed.), 438, 465, 466.

In the case at bar there is no claim that the assignment is void on account of fraud in fact, but simply that it is void because a sufficient bond was not given as required by the statute. The objection to the proceedings is a technical one, and has little real merit. The objection could have been as easily ascertained by the defendant before he filed his claim as it could afterwards; and there is no evidence given in the action, or any allegation, that the defect which is now claimed to invalidate the bond and consequently the assignment, was not known to the creditor, Elijah Gove, when he filed his claim in the assignment proceedings. He must be held, therefore, to have filed his proofs of claim, with knowledge of the fact upon which his representatives now seek to invalidate the assignment, and so, by all the authorities, waives the irregularity.

Some of the authorities above cited, and many others not cited, seem to hold that, by filing proofs of his claim without making any reference to his lien upon the assigned property or in any way claiming to reserve to himself his rights by virtue thereof, the creditor also waives his lien; but, as we think the judgment in this case is right and should be affirmed,— even if it be admitted that the appellants had a valid lien upon the real estate in question when the order made by the circuit court upon the petition of the assignee, authorizing him to sell the property discharged of such lien to the respondent, was made,— we do not determine that question.

The real question in this case is, in our estimation, whether the circuit court has jurisdiction to entertain the petition of the assignee and to decide upon the same. If the court had jurisdiction to act upon the petition, under the law,

then the decision of the circuit court binds all parties to the proceedings; and, whether the order was rightly or wrongly made, it binds all parties until the same is reversed or otherwise set aside. Its validity cannot be questioned in a collateral action. Upon this question, we understand the learned counsel for the appellants contend, in the first place, that the circuit court had no jurisdiction over the subject matter of the petition; and, second, if the court had jurisdiction, the appellants are not bound by the order of the court, because the deceased creditor, whom they represent, was not a party to the proceeding and had no notice thereof. The question of notice was found against the appellants by the court, and, as we have said above, upon sufficient evidence. There are, therefore, but two questions to consider: (1) Had the court jurisdiction of the subject matter of the petition? and (2) Was the creditor, whom the appellants represent, a party to such proceeding?

Upon the question of jurisdiction, sec. 1693, R. S., reads as follows: "The circuit court, or the judge thereof in vacation, shall have supervision of the proceedings in all voluntary assignments made under the provisions of this chapter, and may make all necessary orders for the execution of the same." This section is the first section of ch. 80 of the Revised Statutes, and that chapter regulates the proceedings in cases of voluntary assignments. It is not denied but that the assignment in question was made under the provisions of said chapter. Under the provisions of the section above quoted it is clear that the circuit court of the county in which the assignment proceedings are taken has some power over such proceedings, and may make all necessary orders for their execution.

It may be urged that there is no necessity for the court to make any order in regard to the sale of the property in the hands of the assignee, because he has the power to sell

conferred upon him by the assignment, and it is his duty, under the assignment, to make sale of all the assigned property within a reasonable time and for the best price he can obtain for the same; and, as he only acquires, by the assignment, the rights of the assignor, he has no power to sell the property, except subject to such liens as the assignor has created or suffered to be placed thereon. This argument is plausible, and, as a general rule, it is a correct statement of the law. We think, however, courts of equity have the power, under certain circumstances which seem to render it necessary, to change the rule, and give the power to the trustee to sell the property free of the incumbrances, and transfer the lien of the incumbrances to the proceeds of the sale instead of to the property itself. This power has been recognized in sales upon foreclosure of mortgages, and also in sales made by receivers. *In re Bennett,* 12 N. B. R. 257; *Hackensack Water Co. v. De Kay,* 36 N. J. Eq. 548, 553; *Walling v. Miller,* 108 N. Y. 173, 177; *Wiswall v. Sampson,* 14 How. 52, 65–67; *Albany City Bank v. Schermerhorn,* 10 Paige, 263; *Noe v. Gibson,* 7 Paige, 513. Such sales are also recognized, by the statutes of this state, in the settlement of the estates of deceased persons. And in the state of Pennsylvania, where the statute does not confer upon the courts any other special or general powers over the proceedings in voluntary assignment, there is a statute giving the power to certain courts to order the sale of incumbered property, held by the assignee, freed from the incumbrances. See 1 Brightly, Purd. Dig. 119, and Pub. Laws 1876. We think the petition to the circuit court, by the assignee, presented facts which called upon the court to determine the question whether a sale should be made of the property in question freed from the incumbrances. Had the purchase price been as large or larger than the incumbrances thereon, there can be no doubt but that the sale would have been rightly ordered. In that

AUGUST TERM, 1888. 125

Littlejohn vs. Turner and another, Ex'rs, etc.

case, the incumbrancers having been paid off out of the proceeds, they could not have complained; and, if the sale was a judicious one and for the full value of the property, the general creditors could not complain. Upon the face of the proceedings in this case, it does not appear that any one objected to the order made by the court. All the other incumbrancers acquiesced in the sale; and, for anything appearing to the contrary in the record, the defendants in this case also acquiesced. The creditor whom they represent had notice of the application for the order and, it seems, failed to appear and object to the order; or, if he did appear and object, he has failed to take any steps to have the order set aside or reversed. In such case, the court having jurisdiction to act upon the application, the order made thereon cannot be impeached in a collateral action, except for fraud. If irregular or erroneous merely, the proceedings to set it aside must be taken in the case in which it was made. There is no claim made in the case at bar that the action of the assignee in obtaining the order of sale was fraudulent in fact; it must, therefore, stand until set aside or reversed upon appeal or otherwise. High on Receivers (2d ed.), 159, sec. 196; *Libby v. Rosekrans*, 55 Barb. 219; *Hackley v. Draper*, 60 N. Y. 88. We think that under the statute the circuit court had jurisdiction to act upon the petition of the assignee, and that the order made by said court is final and conclusive upon all the parties to said proceedings; and, the respondent having purchased the property in good faith, he is entitled to hold the same freed from the lien of the judgment of the said appellants; and that the judgment in this case, perpetually enjoining the sale of said property on said judgment, should be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.