In re Assignment of Sherry: Claims of the German National Bank of Oshkosh.

*September 24 — October 11, 1898.*

*Voluntary assignment: What claims may be proved: Liability as indorser: Several promises to pay one debt: Equity.*

1. Under sec. 1700, R. S. 1878 (providing that "debts to become due as well as debts due may be proved" in assignment proceedings), if the assignor is contingently liable as indorser upon commercial paper at the time of the assignment, and such liability becomes absolute during the pendency of the proceedings, the creditor may, when it so becomes absolute, prove it as a claim and share in all subsequent dividends.

2. Several promises by the assignor to pay the same debt, though different in form, cannot be proven so as to allow the creditor more than one share in the dividends. Thus, a creditor who holds the note of the assignor and also, as collateral thereto, the note of a third person indorsed by the assignor, cannot prove a claim on account of the indorsement of the collateral note in addition to a claim upon the original obligation.

3. In administering the estate of an assignor for the benefit of creditors, as to matters concerning which the law makes no provision, or where the provisions made are in any way incomplete, the court will apply equitable principles and make such ruling as will best carry out the general scheme and purpose of the law,— the equal distribution of the insolvent's estate among all his creditors in proportion to their claims.

Appeals from orders of the circuit court for Winnebago county: Geo. W. Burnell, Circuit Judge. *Affirmed.*

On the 17th of November, 1897, Henry Sherry made a voluntary assignment for the benefit of his creditors to one *Cameron.* On the same day the Park Falls Paper & Pulp Company and the Ingersoll Land & Lumber Company, corporations of which Sherry was president, also made voluntary assignments to the said *Cameron.* *Cameron* qualified as assignee under all the assignments. Prior to the assignments, Sherry had indorsed notes of the two corporations, and the same were, at the time of the assignments, the property of the *German National Bank of Oshkosh,* but were not yet due. The notes became due at various dates between November 24 and December 27, 1897, and were all duly protested, and thereafter the bank duly filed proofs of claim upon said notes against Sherry as indorser, to which the assignee filed objections. The court allowed the bank's claim upon all of these notes, and the assignee appeals from that allowance.

At the time of the assignments Sherry was also indebted to the bank upon his own note for $1,500, and he had given the bank, as collateral security thereon, the note of the Park Falls Paper & Pulp Company for $1,500, payable to his own order, and indorsed by himself, which fell due December 27, 1897, and was duly protested on that day. The bank filed proof of its claim against Sherry for $1,500 on his own note, and attempted to file proof of claim against him for $1,500 additional on account of his indorsement of the Park Falls Paper & Pulp Company collateral note. To this last claim the assignee filed objections, and the court held that it could not be proven, and the bank appeals from this disallowance.

For the assignee there was a brief by *Hooper & Hooper,* and oral argument by *Moses Hooper.* They contended, *inter alia,* that in order to entitle a creditor to prove his claim, the debt upon which it is based must be due or to become due as a matter of certainty, not a debt to become due upon

some contingency.    Stats. 1898, secs. 1694*d*, 1698, 1699, 1700. As to what constitutes such a debt, see *People v. Arguello*, 37 Cal. 524, 525; *Wentworth v. Whittemore*, 1 Mass. 471, 473; *Davis v. Ham*, 3 id. 33, 37; *Frothingham v. Haley*, id. 68, 71; *Wood v. Partridge*, 11 id. 488, 493; *Garton v. B. & E. R. Co.* 4 Hurl. & N. 33, 37; *In re Greensill*, L. R. 8 C. P. 24, 27; *In re Westbourne Grove Drapery Co.* 5 Ch. Div. 248, 252, 253; *In re Hevenor*, 144 N. Y. 271, 273, 274; *Matter of Adams*, 67 How. Pr. 284; *Ragsdale v. Winnsboro Nat. Bank*, 23 S. E. Rep. 947, and cases cited; *Brough's Estate*, 71 Pa. St. 460; *Weinmann & Co.'s Estate*, 164 id. 405; *Bosler v. Kuhn*, 8 Watts & S. 183; *In re Snyder's Estate*, 8 Phila. 302; *Sweatman's Appeal*, 150 Pa. St. 369; *Deane v. Caldwell*, 127 Mass. 242.    Statutes providing for proof of debts contracted before, and to become due after, assignment or bankruptcy, do not justify allowance of claims contingent at time of assignment or bankruptcy.    *Utterson v. Vernon*, 4 Term, 570; *Staines v. Planck*, 8 id. 386, 389; *Taylor v. Mills*, 2 Cowp. 525, 526; *Snaith v. Gale*, 7 Term, 364; *Goddard v. Vanderheyden*, 3 Wils. 262; *Paul v. Jones*, 1 Term, 599; *Roosevelt v. Mark*, 6 Johns. Ch. 266, 271, 283, 285; *Andrus v. Waring*, 20 Johns. 153; *Bishop v. Young*, 17 Wis. 47, 53; *Foster v. Singer*, 69 id. 392, 394, 395; *Edwards v. Roepke*, 74 id. 571, 575.    On the same point, and relating specifically to indorsers, see *Frost v. Carter*, 1 Johns. Cas. 73–76; *Mechanics' & F. Bank v. Capron*, 15 Johns. 468, 469; *Doolittle v. Southworth*, 3 Barb. 79, 85; *In re Loder*, 4 Ben. 305; *Wells v. Mace*, 17 Vt. 503; *Farmers' Bank v. Galpin*, 1 Harr. 563; *McMullin v. Bank*, 2 Pa. St. 343; *Selfridge v. Gill*, 4 Mass. 96; *Cummings v. Thompson*, 7 Met. 132; *Ainslie v. Wilson*, 7 Cow. 668.

For the claimant there were separate briefs by *J. C. Kerwin*, attorney, *Thompson, Harshaw & Thompson*, and *Cyrus W. Rice* and *Bouck & Hilton*, of counsel, and oral argument by *C. D. Jackson* and *J. C. Thompson*.

In re Assignment of Sherry: Claims of German Nat. Bank of Oshkosh.

WINSLOW, J.  A single question is presented upon each appeal.  On the appeal of the assignee the question is whether a claim arising on the indorsement of commercial paper can be proven against the insolvent estate of the indorser when the paper is not due at the time of the assignment but falls due within the time allowed for proving claims.  On the bank's appeal the question is whether a creditor who holds the insolvent's own obligation and the obligation of a third person, indorsed by the insolvent, as collateral thereto, can prove a claim against the insolvent estate on account of the indorsement of the collateral note in addition to a claim upon the original obligation.

1. Upon the appeal of the assignee the contention is that Sherry's liability as indorser upon the corporation notes at the time of the assignment was not a debt either due or to become due, but simply a contingent liability, and that hence it was not provable.  It is said that the statute only allows "debts due or to become due" to be proven (R. S. 1878, sec. 1700), and that a mere contingent liability which may never ripen into an absolute liability at a future time is not such a debt.  This theory seems to proceed on the assumption that there must be an absolute debt existing at the time the assignment is made.  We are not inclined to give so narrow and restricted a construction to the assignment law.  The statute nowhere says that an absolute liability must exist *at the time the assignment is made.*  Doubtless there must be a liability when the assignment is made, and, if that liability be contingent and ripen into an absolute one before the proof of claim is filed, no reason is perceived why it may not then be proven.  As said in *In re Meyer*, 78 Wis. 615–627: "At the time the proof of claim is made, if the whole debt be due and unpaid, it is the right of the party to present and prove his claim."  Just such a situation as this was involved in the case of *Plankinton v. Gorman*, 93 Wis. 560.  There a claim was filed by an indorsee of a note against the

estate of the insolvent indorser, an assignment having been made by the indorser before the note fell due, and it was held that by proving his claim the indorsee obtained an interest in the assets in the hands of the assignee. Doubtless numerous other cases might be found where the same result has been reached *sub silentio.* *Suppiger v. Gruaz,* 137 Ill. 216. Our assignment law is intended to provide for an equal distribution of the assignor's property among all his creditors. It contains no clause expressly providing that a claim must be absolute at the time of the assignment, nor does it contain any clause cutting off claims if not proven within a certain time. If claims are not proven within three months from the first publication of the assignee's notice to creditors, the only penalty is that the creditor shall not participate in any dividends made before his claim is filed. R. S. 1878, sec. 1700. So long as there remains property to be divided, claims may be filed after the expiration of the three months as well as before, so far as participation in future dividends is concerned. *Bradley v. Kroft,* 19 Fed. Rep. 295. Where, therefore, an assignor is contingently liable as indorser upon commercial paper at the time of the assignment, which liability becomes absolute during the pendency of the assignment proceedings, we think it clear that the creditor may then prove such claim, and share in all subsequent dividends. Further than this it is not necessary to go in the present case.

2. The question whether the bank may prove its claim against Sherry as indorser upon the collateral note is somewhat different in its character. Sherry owed the bank absolutely $1,500, and put up the note of a corporation for the same amount, indorsed by himself, as collateral to his indebtedness. The bank has proved its claim against Sherry's estate for the $1,500 debt, and now desires to prove a claim for a like amount by reason of the indorsement of the collateral note. No question is raised as to the general rule of

law that a creditor may file proof of claim against both the maker and indorser of commercial paper for the full amount of the note (*In re Meyer*, 78 Wis. 615), but it is said that, where the indorsement is simply as collateral to the indorser's own debt, this course would result in a double proof of the same debt, and make the bank, by the act of the parties, a preferred creditor. On the other hand, it is argued that the indorsement is a distinct liability from the original debt; that suit might be brought against the debtor (had no assignment been made) both on his original note or debt and upon the collateral note to enforce his liability as indorser, and judgments obtained contemporaneously in both actions; and, if this be so, it is asked, why may not claims be filed in insolvency upon both claims? That there are serious difficulties surrounding the question cannot be denied. If the right to prove claims against an insolvent estate is always commensurate with the right to sue, then the argument of the claimant seems faultless; but is this necessarily so? To answer this question it is necessary to take a comprehensive view of the scope and purpose of the assignment law.

As it now exists, the manifest design of the law is to provide for an equal distribution, under direction of the court, of the insolvent's estate among all his creditors in proportion to their claims. To accomplish this purpose, and to exclude all preferences (except for taxes and wages of employees), most careful and elaborate provisions have been made. When a voluntary assignment has been made, the estate passes into complete control of the court, which is charged with the duty of seeing that it is administered in accordance with the law. In the course of such administration the court frequently meets questions which demand the exercise of its equitable powers and the application of equitable principles. It is not meant by this that any requirements of the assignment law can be altered or ignored

by the court upon any consideration, but simply that as to matters concerning which the law makes no provision, or where the provisions made are in any way incomplete, the court will make such ruling as will best carry out the general scheme and purpose of the law. Indeed, such authority is directly conferred by sec. 1693, R. S. 1878, and it has been held that under it the court might apply to the administration of insolvent estates the established rules of equity where necessary. *Littlejohn v. Turner*, 73 Wis. 113; *Severson v. Porter*, 73 Wis. 70; *Ford v. Clarke*, 83 Wis. 45. With these general principles in mind, let us examine the present case.

Sherry owed the bank $1,500, and no more, nor did he increase that debt when he indorsed to the bank the collateral note of $1,500. True, he entered into a distinct obligation, but he did not increase his debt. The new and distinct obligation was practically another promise to see that his previous debt was paid, because Sherry's indorsement amounted simply to a promise that the bank would realize enough out of the collateral to pay his (Sherry's) debt. Thus the bank then held two promises made by Sherry to pay the same debt. As between Sherry and the bank, the situation was practically the same as if Sherry had given his own note as collateral to the first note. We apprehend that none would claim that under such circumstances both notes could be proven as debts and share in the dividends. If so, then an easy way has been found to evade the provisions of the assignment law, and provide for the payment of one creditor in full, while others receive but a percentage. However we look at it, the substantial fact remains that both of Sherry's promises held by the bank, though different in form, represent but one debt, and both will be discharged by the payment of that debt. Nor would the situation of the bank be different if it had obtained judgments against Sherry on both claims, and were attempting to prove them both against his estate. Both judgments would rep-

resent but one debt, and would be satisfied by payment of that debt. Now, as before stated, the object and purpose of the assignment·law is to apply the insolvent's. estate equally so far as it will go to the payment of his debts. It nowhere says, either directly or by implication, that a creditor who holds two promises by the insolvent to pay the same debt shall have the right to prove both of them. It says that "debts due or to become due" may be proven, but does not say that several promises to pay the same debt, if different in form, may all be proven. Certainly the law should not be construed so as to permit one creditor, who holds two promises of his debtor to secure the same debt, to receive twice as much from the estate as another creditor to the same amount who is so unfortunate as to hold but one promise, unless such construction is a necessary result from its plain provisions. We do not find any provisions that make such a result either necessary or even proper; hence the purpose and spirit of the law, which is to afford an equal distribution of the estate to all creditors in proportion to their honest claims, can be carried out.

These views necessitate affirmance of the orders of the trial court upon both appeals.

*By the Court.*— Orders affirmed on both appeals.