In re Plankinton Bank: The National Bank of the Republic, Respondent, vs. Herman, Appellant.

*April 23—June 19, 1902.*

*Voluntary assignment: Objections to claim, after time limited: Discretion.*

1. An assignee or creditor who wishes to file objections or to attack any claim on file, after the time limited by sec. 1699, Stats. 1898, can do so only upon application to the court, upon notice to the claimant, a *prima facie* showing of merits, and some reasonable excuse of the default; in which case the court will exercise a reasonable discretion in furtherance of justice.
2. The fact that one assignee has resigned and a new one been appointed does not authorize the latter to reopen the proceedings so as to attack an admitted claim, otherwise than by permission of the court upon notice and good cause shown.

Appeal from an order of the circuit court for Milwaukee county: Frank M. Fish, Judge. *Affirmed.*

On June 1, 1893, the Plankinton Bank of Milwaukee made a voluntary assignment to William Plankinton, who accepted said trust and qualified as assignee. On June 2d, notice to creditors was published. August 31st, the *National*

*Bank of the Republic* filed its claim with the assignee, setting out that on December 31, 1892, the Buffalo Mining Company executed its five promissory notes of $10,000 each, payable to the order of F. and W. Schlesinger, due on demand, and bearing seven per cent. interest. Before maturity, said notes were indorsed and delivered to the Plankinton Bank, and by it were indorsed and duly transferred to the claimant. On June 19, 1893, said notes were presented for payment, payment refused, and each was duly protested, and notice given to the Plankinton Bank. June 27, 1893, the sum of $5,000 was paid on the notes. No further payments have been made. Also that on February 20, 1893, F. T. Day executed his promissory note, payable to W. H. Momsen, cashier, for $25,000, due on demand, with seven per cent. interest. Before maturity, said note was indorsed by the Plankinton Bank, and became the property of claimant. Sundry payments were made, and after deducting all offsets there was due thereon the sum of $3,802.80 and interest at five per cent. from June 2, 1892. August 19, 1893, said note was presented for payment, payment was refused, and protest made and notice duly given. The balance claimed on all the notes was $49,648.63.

This claim was duly filed with the clerk of the circuit court on November 23, 1893, by the assignee. The record shows that there was attached to this claim a letter from attorneys in New York, representing the claimant, dated December 23, 1893, and a statement of account between the claimant and the Plankinton Bank, showing the amount due to be $49,229.15. The letter mentioned refers to a letter from the assignee, and asks him to consider "our last communication . . . as an amendment to the proof of claim heretofore forwarded," etc. Upon the original proof of claim, in lead pencil, in the handwriting of Mr. A. E. Fletcher, agent of the assignee, appears the following: "This claim amended as per statement attached, making correct amount $49,229."

November 23, 1893, the assignee filed proof of the publication of notice, a list of creditors to whom notice had been sent, and a list of creditors from whom affidavits of claims had been received and filed as required by sec. 1699, S. & B. Ann. Stats. No objections were ever filed to this claim. From time to time thereafter the assignee paid dividends on all claims, aggregating fifty-five per cent.

On July 18, 1899, the assignee resigned, and Irving M. Bean was appointed to succeed him. December 20, 1899, Bean was removed, and *Henry Herman,* the present assignee, was appointed. In January, 1900, *Herman* filed a petition setting forth that he was advised by his counsel that said claim was invalid; that no list of claims had been filed by the former assignee, and that no order had been made in the assignment proceedings allowing or determining who were creditors; and asking to be allowed to file objections to said claim. An *ex parte* application was made to Judge Johnson, and on January 27, 1900, an order was made allowing objections to be filed, and providing for service of the same upon the claimant. The objections were to the effect that the claim in question was not a loan for which the notes in question were held as collateral, but a rediscount of the same, and that the same was not protested so as to bind the Plankinton Bank as indorser, and therefore the latter was not indebted to the claimant or liable on its indorsement. These objections were served on claimant. On March 21, 1900, the claimant moved to set aside and vacate said order permitting objections to be filed, on the ground that such order had been improvidently granted; that the time for filing objections had long since expired; that the said assignee was estopped by action of his predecessor from now questioning said claim; and that the petition upon which said order was granted did not state facts to justify opening the default. A hearing was had before Judge Fish, who was called in for that purpose. The

former order was vacated, and the objections filed were stricken out. The assignee appeals.

For the appellant there were briefs by *Moritz Wittig, M. M. Riley,* and *J. B. Doe,* and oral argument by *Mr. Wittig* and *Mr. Riley.*

For the respondent there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel, and the cause was argued orally by *Jackson B. Kemper.*

BARDEEN, J. Sec. 1699, S. & B. Ann. Stats., provides that, at the expiration of three months from the first publication of notice to creditors, the assignee shall file with the clerk of the circuit court proof of the publication of such notice, a list of creditors to whom such notice was mailed, and a list of creditors from whom affidavits of claims have been received. At any time within thirty days after such list is filed, the assignee or any creditor may file written objections to the whole or any part of any debt claimed by any creditor, and serve the same upon the creditor in the manner therein pointed out. The claimant herein filed its claim within the time required. Later, upon correspondence with the assignee, its claim was amended, and for six years and two months the claim stood without objection.

Shortly after the expiration of the three months after the publication of the notice to creditors, the assignee filed a list of creditors from whom affidavits of claims had been received, which included the claimant's claim among many others. The attorneys for the assignee have raised some questions as to the regularity of filing this list. They are so unimportant that we decline to discuss them. At the very latest, the time for filing objections to this claim expired thirty days after its amendment. When that time expired, it stood as an admitted claim. No action, either by the assignee or by the court, for its allowance, was required or is contemplated by

the statute. The deed of assignment requires the assignee to gather up the assets of the assignor and distribute the proceeds to the *bona fide* creditors in accordance with the provisions of the statute. The statute requires each creditor to exhibit and file his claim. It then becomes the duty of the assignee to examine and inspect such claims, and make such objections thereto as he may be advised. Any creditor may also file objections, but each must proceed within the time limited by the statute. At the expiration of that time, no objections being filed, the claim stands admitted without any action either by the court or the assignee. It stands allowed by operation of law. It cannot be thereafter attacked except by permission of the court, upon good cause shown.

No line of practice has been prescribed by the statute, or laid down by the court, in cases where it is desired to obtain relief from default or failure to file objections as required. The statute gives the court plenary power and full supervision over all proceedings in voluntary assignments. Sec. 1693. We have no doubt as to its power to supervise, revise, review, and reverse any action taken by the assignee up to the very day of his final discharge. It may, at any time before final settlement, relieve the assignee from any default; may investigate, correct, adjust, or disallow claims, or reduce or increase the same according to the rights of the parties. This power of supervision was given the court in pursuance of the policy of the law to work out equal and exact justice between the estate of the assignor and the creditors. The power to investigate a claim at any stage of the proceedings, and make any correction that equity and justice demands, results from the general grant of power of supervision. Courts of bankruptcy exercised it freely under the federal statutes. Black, Bankr. p. 179, § 57. Questions of amendment or relief from defaults are such as address themselves to the equitable consideration of the court, and great discretion should be exercised in disposing of them. The discretion to be invoked

must have a reasonable basis to rest upon. Although, as suggested, no definite rule of practice has been adopted, we see no reason why the ordinary rules in legal proceedings should not govern, so far as applicable. Such rules should be applied, in view of the policy and purpose of the assign- ment law, to work out justice to all concerned in the assigned estate.

In the proceeding before us, the claimant filed its claim within the time limited. By correspondence between the assignee and the claimant it was amended to show the full nature of the claim and the true amount due. It stood as an admitted claim for more than six years. In the meantime the assignee paid no less than five dividends, aggregating fifty-five per cent. of the face of the claim. When the present assignee came into power his attorneys seem to have regarded the action of the former assignee with great suspicion. When the claim of the *National Bank of the Republic* was reached, they concluded that it was invalid. Thereupon the assignee made an *ex parte* application to the court for leave to file objections. The petition set out that no order had been made determining who were creditors and entitled to participate in dividends, and "no list of claims allowed by William Plan- kinton, the former assignee, has been filed, . . . and that the persons who have filed claims against said estate, as creditors thereof, can only be ascertained by going through the several proofs of claim filed with the clerk." An order was made allowing objections to be filed. Thereafter, the attorneys of the claimant moved to vacate such order on vari- ous grounds, among others that such order had been improvi- dently made. Such motion was granted, and we think properly. In the first place, the assignee's application was *ex parte*. The bank's claim had stood admitted for more than six years. Repeated dividends had been paid upon it. The assignee and all creditors were in default. The bank had a right to depend upon this situation. If it was to be changed,.

it was entitled to notice. Not one word appears in the peti-
tion to excuse the default. The fact that one assignee re-
signed, and a new one is appointed, does not reopen the pro-
ceedings. The successor takes the situation as he finds it.
If he desires to change it, it must be upon notice and good
cause shown. The presumption is that the former assignee
did his duty. No fact is mentioned in the objections that
was not fully apparent to the former assignee. The present
assignee made no claim that he had made any investigations
or had obtained any information not possessed by his prede-
cessor. The substance of his objections was that the bank's
claim was not a loan as set forth in the proof of claim filed,
but was a rediscount of the notes mentioned. *Non constat,*
the former assignee may have made full investigation of this
fact, and reached the conclusion that this objection was base-
less. Certainly, the estate should not be involved in useless
litigation, or the claimant put to expense, after so long a
default, without some showing that the former assignee had
neglected to make investigation, or that the present assignee
had become possessed of some information sufficient to war-
rant taking action. The assignee's petition also informed the
court that no list of claims had been filed by the former as-
signee. The record before us shows that such a list, substan-
tially in compliance with the statute, was filed by the assignee
on November 23, 1893. It does not lie in the mouth of the
present assignee to dispute or repudiate the acts of his prede-
cessor, done in this regard, in attempting to comply with stat-
utory requirements. Our conclusion from the record is that
the list filed by Mr. Plankinton was in substantial compliance
with the statute, and that the petition in that respect was
untrue.

That there may be no mistake as to our conclusions, we
will summarize them briefly as follows: When an assignee or
any creditor desires to file objections or to attack any claim
on file, after the time limited by sec. 1699, he may do so upon

application to the court, upon notice to the creditor, a *prima facie* showing of merits, and some reasonable excuse of the default; in which case the court will exercise a reasonable discretion in furtherance of justice. The order allowing the assignee to file objections was improvidently made, because without notice, without any attempt to excuse the default, and because the petition was untrue in the particular before mentioned. These facts justify the order appealed from, and render a discussion of many questions raised by the assignee's attorneys unnecessary.

*By the Court.*—The order is affirmed.