(No. 13802.—Judgment affirmed.)

H. H. EVANS *et al. vs.* THE ILLINOIS SURETY COMPANY.— (THE STATE OF OHIO, Appellee, *vs.* JAMES S. HOPKINS, Receiver, Appellant.)

*Opinion filed April 21, 1921—Rehearing denied June 10, 1921.*

1. STATUTES—*one statute may be incorporated into another by reference.* One statute may be incorporated into another by reference without violating any constitutional provisions, and the effect of such reference is the same as if the statute or the provisions adopted had been incorporated bodily into the adopting statute.

2. CORPORATIONS—*provisions of existing statute must control distribution of assets of insolvent corporation.* Although it is a general rule that claims against an insolvent corporation which are unascertainable and on which no right of action exists at the time the receiver is appointed cannot be proved against the assets in the receiver's hands, yet where there is a statute governing the question of the appointment of a receiver and the liquidation of the corporation's assets its provisions must control.

3. SAME—*provisions of general Incorporation act and Insurance Dissolution act are incorporated into Surety act.* All pertinent and non-inconsistent provisions of the general act for the

incorporation of companies for pecuniary profit and of the act for the dissolution, of insurance companies are to be considered as incorporated into the Surety act of 1899 and are applicable to corporations organized thereunder.

4. SAME—*receiver represents insolvent corporation until settlement is made.* In equity an insolvent corporation continues in existence after the appoinment of a receiver, and the receiver represents the company and is the arm of the law and the agent of the court for the purpose of administering its assets and making distribution among its creditors and the holders of its obligations, but he does not represent the creditors.

5. SAME—*appointment of receiver for surety company does not terminate existing contracts.* The appointment of a receiver for an insolvent surety corporation does not terminate the corporation's existing contracts of suretyship, guaranty and indemnity so as to excuse its liability on a claim arising before the receiver was appointed, although the knowledge of the evidence to prove the extent of the obligation was not had until after such appointment, as the relation of debtor and creditor between principal and surety commences at the date of the obligation by which the surety is bound.

6. SAME—*when claim against an insolvent surety company is provable.* In a proceeding by stockholders for a receiver for an insolvent surety company a claim arising out of the breach of a bond entered into long prior to the appointment of the receiver is provable whether the breach occurred before or after such appointment, provided proof is made within the time limited for exhibiting claims.

7. SAME—*authority of court to dissolve insolvent surety company at suit of stockholders.* Under section 2 of the act for the dissolution of insurance companies a court of chancery has jurisdiction to dissolve a surety company organized under the act of 1899, at the suit of a majority of the stockholders; but neither the court nor the officers of the company can terminate existing contracts or in any manner affect the rights and remedies of the creditors and holders of obligations against.the company or its property in the hands of the receiver, whether the demands are liquidated or unliquidated, absolute or contingent.

8. SAME—*court cannot decree dissolution on appointing a receiver for surety company.* A court of chancery upon appointing a receiver for an insolvent surety company at the suit of stockholders cannot decree dissolution at such time but only after due notice to all parties interested, including all the company's creditors and the holders of its obligations and contracts of suretyship, guaranty and indemnity.

9. SAME—*limitation for presenting claims against an insolvent surety company.* In order to make possible the distribution of the assets of an insolvent corporation in the hands of a receiver a time must be fixed when contingent claims not due must necessarily be excluded, and the time fixed by statute in Illinois for the exclusion of claims against an insolvent surety company organized under the Surety act of 1899 is not less than two years from the date of dissolution of the corporation.

10. WORDS AND PHRASES—*meaning of word "liable."* The word "liable" does not necessarily signify a perfected or fixed legal liability, but rather a condition out of which a legal liability may arise.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

ALBERT J. HOPKINS, for appellant.

PRATT & ZEISS, (JOHN G. PRICE, Attorney General of the State of Ohio, and WILLIAM J. MEYER, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

A bill for dissolution and a receivership of the Illinois Surety Company was filed in the superior court of Cook county April 19, 1916, by fifty-four stockholders of that company, setting forth facts which the bill stated showed insolvency of that company, and praying for an injunction against the further prosecution of its business. The surety company was alone made defendant and on the same day entered its appearance and answered, admitting the facts set forth in the bill, and thereupon James S. Hopkins was appointed receiver, with power to do all acts necessary for the marshaling and distribution of its assets and the closing of its business. The order also enjoined the further transaction of business and expressly retained jurisdiction over the parties until final hearing and settlement thereafter of all of the surety company's unfinished business and of

the receivership. On March 1, 1917, an order was entered by the superior court directing that the creditors of the surety company file their claims with the receiver on or before September 1, 1917. Three certain claims, Nos. 371, 1080 and 1241, were filed by the State of Ohio with the receiver. These claims, with others, were referred to a master, who reported that as to the last two claims above specified no breach of the bond in question had been proved; that as to claim No. 371, the contractors for whom the company became surety failed to carry out the provisions of their contracts but that the default occurred subsequent to the appointment of the receiver, and the master recommended that all three claims be disallowed. The chancellor, upon hearing the master's report, overruled exceptions by the State of Ohio and confirmed the report and entered a decree accordingly. An appeal was taken to the Appellate Court, where claim No. 371 was allowed and it was found that claims Nos. 1080 and 1241 were prematurely filed with the receiver, and the decree of the superior court was reversed, with directions to allow claim No. 371 and for further proceedings with reference to the other two claims consistent with the views set forth in the opinion. The Appellate Court granted a certificate of importance, and the receiver has brought the case here by appeal for further review.

It is argued by counsel for appellant, the receiver of the Illinois Surety Company, that the judgment of the Appellate Court should be reversed and the decree of the superior court affirmed; that the receiver should only allow claims that were valid and due when he was appointed, and that the Appellate Court was wrong in holding damages could be recovered for a breach of any of its outstanding policies or bonds that occurred within two years after the receiver's appointment; that this holding is contrary to the established law of this country as to the allowance of claims filed with a receiver under such circumstances as found in

this record. Counsel argues that when a receiver is appointed for a corporation "its business is brought to an absolute end and the policyholders become creditors to an amount equal to the equitable value of their policies." (*Carr* v. *Hamilton*, 129 U. S. 252.) There can be no question that it is a general proposition of law that claims which were unascertainable and on which no right of action existed at the time the receiver was appointed cannot be proved against the assets in the receiver's hands; that an adjudication of insolvency of the insurer and the making of an order of liquidation terminated the policies of the company, so that a claim for a loss accruing thereafter was not provable. (23 R. C. L. 102; *Fuller* v. *Wright*, L. R. A. 1917E, 1139, and authorities cited in the note on p. 1141; *People* v. *Metropolitan Surety Co.* Ann. Cas. 1913D, 1180, and cases cited in note.) But when there is a statute of the State controlling the question of the appointment of a receiver and the liquidation of a corporation's assets its provisions must control. "When a statutory system is administered, the only question for the courts is what the statutes prescribe." *Filene Sons Co.* v. *Weed*, 245 U. S. 597.

The Illinois Surety Company was organized under the laws of this State in 1905 for the purpose of doing a general surety business, with headquarters in Chicago, under the provisions of an act passed in 1899. (Hurd's Stat. 1919, p. 779.) Section 14 of that act provides: "Corporations formed under this act shall be subject to all laws of this State governing corporations for pecuniary profit, as provided for in an act entitled, 'An act concerning corporations,' approved April 18, 1872, in force July 1, 1872, and amendments thereto, in force July 1, 1897, and the duties thereof, and shall have the powers thereof, so far as the same are not inconsistent with the provisions of this act. Such companies shall also be subject to the provisions and requirements of an act entitled, 'An act in regard to

the dissolution of insurance companies,' approved February 17, 1874, in force July 1, 1874." Section 10 of the general Incorporation act, as to corporations organized for pecuniary profit, provides: "All corporations organized under this law whose powers may have expired by limitation or otherwise, shall continue their corporate capacity during the term of two years, for the purpose only of collecting the debts due said corporation and selling and conveying the property and effects thereof." (Hurd's Stat. 1917, p. 701.) Section 12 of the last named act also provides: "The dissolution, for any cause whatever, of any corporation created as aforesaid, shall not take away or impair any remedy given against such corporation, its stockholders or officers, for any liabilities incurred previous to its dissolution."

It is argued by counsel for appellant that the provisions of the act regarding corporations for pecuniary profit can not be applied to a surety company because it is an insurance company, as this court has held in *People* v. *Potts,* 264 Ill. 522, and that the first section of that act provides that the provisions of the act shall not apply to banking and insurance; that this court has held in *Commercial Trust Co.* v. *Mallers,* 242 Ill. 50, that the act does not apply to corporations for banking purposes, and that for the same reason the act cannot apply to insurance companies. In making this argument counsel seems to have overlooked the long settled doctrine of this and other courts that it is a familiar legislative process to incorporate one statute into another by reference; that "it is a method of legislation which is frequently followed and has uniformly been held to be free from constitutional objections. The effect of such reference is the same as though the statute or the provisions adopted had been incorporated bodily into the adopting statute." (*People* v. *Crossley,* 261 Ill. 78.) This court has also said that "whenever an act of the legislature confers powers which are recited in another act, the act to

which reference is made is to be considered and treated as if it were incorporated into and made a part of the act which contains the reference." *Zeman* v. *Dolan,* 279 Ill. 295; *People* v. *Stitt,* 280 id. 553.

As already stated, the present Surety act, under which this surety company·was organized, became a law in 1899 and the general Incorporation act regarding corporations for pecuniary profit was passed in 1872. The legislature, without question, by the later act intended to incorporate the provisions of the Incorporation act of 1872 into and as a part of the provisions of the Surety act of 1899, and under the decisions of this court there can be no question but that the provisions of the general Incorporation act heretofore quoted, and all its other applicable provisions, apply to corporations organized under the Surety act; and this court in decisions already rendered has assumed that the provisions of the general Incorporation act in this regard apply to insurance companies. In *Life Association of America* v. *Fassett,* 102 Ill. 315, the court, after stating that upon the dissolution or civil death of a corporation all its real estate, by the strict rule of the common law, reverts to the original owners or their heirs and all its personal estate vests in the crown in England and in the State here, and all debts due to or from it are by operation of law extinguished, further stated that equity views the matter in quite a different light, and said (p. 323) : "In equity the corporation is regarded as a trustee holding the corporate property for the benefit of its creditors and shareholders, which, upon its dissolution or civil death, a court of chancery will lay hold of as a trust fund and distribute for their benefit. With a view of mitigating the rigor of the common law with respect to the effects of a defunct corporation, the legislatures of this and most, if not all, of the other States of the Union, have by appropriate legislative enactments provided for a just and equitable distribution of their assets in cases of insolvency or sudden

dissolution from any cause, and our own act on the subject contains a provision which in express terms extends their corporate existence two years from the date of their dissolution, for such purpose. (Secs. 10 and 25, chap. 32, Rev. Stat.) From these and other provisions of the statute it clearly appears that it is a part of the settled policy of the State,—at least so far as domestic corporations are concerned,—that upon their dissolution, however that may be effected, they shall nevertheless be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts." The doctrine of this opinion has never been modified or changed, and in some respects it has been specifically approved in several decisions. *St. Louis and Sandoval Coal Co.* v. *Sandoval Coal Co.* 111 Ill. 32; *Singer* v. *Hutchinson,* 183 id. 606; *Eau Claire Canning Co.* v. *Western Brokerage Co.* 213 id. 561; *Commercial Trust Co.* v. *Mallers, supra; Edwards* v. *Schillinger,* 245 Ill. 231.

It will be noted that section 14 of the Surety act, under which the Illinois Surety Company received its charter, also adopts the provisions and requirements of the act with reference to the dissolution of insurance companies. (Hurd's Stat. 1917, p. 1679.) Section 1 of the last act with reference to the dissolution of insurance companies provides for their dissolution upon proceedings brought by the Auditor of the State. Section 2 provides that a majority in number or interest of the stockholders of any insurance company of the State may apply by petition to a court of proper jurisdiction in which the company is located, asking for the dissolution and the closing up of the affairs of the corporation. Section 4 provides that insurance companies whose charters expire by their own limitation or become forfeited by non-user or are dissolved by decree of court or otherwise, shall nevertheless be continued bodies corporate for the term of two years after such expiration, forfeiture or dissolution, for the purpose of prosecuting and

defending suits by or against them and of enabling them gradually to settle and close their concerns, to dispose of and convey their property and divide their capital stock and assets, "but not for the purpose of continuing the business for which they were organized." Section 5 provides that when the charter of any such insurance company expires, is forfeited or annulled, or the corporation is restrained from the further transaction of its business, or is dissolved, as hereinbefore provided, the court, upon application of the Auditor or of a member, stockholder or creditor, may, at any time before the expiration of said two years, appoint one or more persons to be receivers, to take charge of the estate and effects of the company, including such securities as may be deposited with the Auditor or Treasurer of State, and to collect the debts due and property belonging to it, with power to prosecute and defend suits in the name of the corporation or in their own names, to appoint agents under them, and to do all other acts, "and when necessary for the final settlement of its unfinished business, the powers of such receivers may be continued as long as the court deems necessary therefor." Section 6 provides that the receiver shall pay all debts due from the company if the funds in his hands are sufficient therefor, and if not, he shall distribute the same ratably among the creditors who prove their debts, in such manner as the court may direct.

There can be no question that the provisions of the act for the incorporation of companies for pecuniary profit and the provisions of the act for the dissolution of insurance companies are both to be considered as incorporated into the Surety act, under which this company was organized. This court, in discussing the power of receivers in *Republic Life Ins. Co.* v. *Swigert,* 135 Ill. 150, said (p. 167) : "We understand the rule to be, that where a receiver is appointed for the purpose of taking charge of the property and assets of a corporation, he is, for the purpose of determining the nature and extent of his title, regarded as representing

only the corporate body itself and not its creditors or share-holders, being vested by law with the estate of the corporation and deriving his own title under and through it." The court also quotes with approval, on page 168, from another decision, as follows: "It has been said in this as in other cases, that the receiver represents the creditors and the stockholders, but for all the purposes of inquiry into his title he really represents the corporation. He is by law vested with the estate of the corporate body and takes his title under and through it. It is true, indeed, that he is declared to be a trustee for creditors and stockholders, but this only proves that they are the beneficiaries of the fund in his hands, without indicating the sources of his title or the extent of his powers." The court further states, on page 176, that an administrator is merely a representative of his intestate, and an assignee is not the representative of creditors but the agent of the assignor, and that, without regard to any expansion of his powers by statute or by an authorized decree of court, the receiver is ordinarily only the custodian of property, "merely the representative of the owners of the property submitted to his control." But the opinion goes on to state that, "so far as his powers are derived from a statute or from a lawful decree of court, and the powers do not involve rights which at the time of his appointment were vested in such owners, he is not merely their representative, but is the instrument of the law and the agent of the court which appointed him. Such right and authority as the law and the court rightfully give him he possesses, and in respect to such right he is not circumscribed and limited by the right which was vested in and available to the owners." The decision of that case still remains the law in this State.

The receiver in this case is the representative and successor of the company and is the arm of the law and the agent of the court for the purpose of administering its assets and making distribution among its creditors and hold-

ers of its obligations, and the contracts of suretyship, guaranty and indemnity, according to the provisions of the statutes and the course of practice in equity. The appointment of the receiver did not terminate the contract of the company with the claimant as of that date. It did not impair the obligation of the contract then existing. It ought not and did not affect the right or remedy the claimant would have for a breach of the contract. "The appointment of receivers for an insolvent corporation does not work its dissolution in the absence of a judicial declaration to that effect. * * * Nor does it determine the rights of any of the parties concerned. * * * In the present instance, therefore, the liabilities of the insolvent but undissolved corporation were not affected by the receivership, and its assets were thereby merely impressed with a trust for its creditors." (*Woodland* v. *Wise*, 112 Md. 35.) This, it seems to us, is exactly the situation in the case now being considered. The decree appointing the receiver at the instance of a majority of the company's stockholders and with the consent of the company's officials did not change the obligations, debts or liabilities of the insolvent company,—it merely stopped the company's activities at that date. The corporation could not thereafter contract nor be contracted with. "When the engagement of a surety is a contract and not a bare authority it is not usually revoked by his death, and his estate remains liable the same as he would have been if he had lived." (Brandt on Suretyship and Guaranty,—3d ed.—sec. 150.) This court held to the same effect in *Rapp* v. *Phœnix Ins. Co.* 113 Ill. 390, and said (p. 401) : "And yet to decide this case in conformity with appellant's theory would be, in legal effect, to assert, as we understand it, that very proposition. We unhesitatingly decline, both upon reason and authority, to give our adhesion to any such a doctrine." On the question of death of the surety or dissolution of a surety corporation there certainly can be no difference, in principle, between indi-

vidual and corporation. If death does not relieve an individual surety from the obligation he has entered into, the dissolution or receivership of a corporation cannot relieve a corporate surety. This court in a recent decision (*Union Trust Co.* v. *Shoemaker,* 258 Ill. 564,) laid down a similar doctrine when it said the death of a surety on a surety bond and replevin bond did not change the liability of his estate upon the bond; that it was the same as his liability would have been had he lived. "The plaintiff had a right to repose upon the solvency and sufficiency of the surety. If his security in regard to future breaches ceases upon the death of the surety, he might suffer, however vigilant." *Green* v. *Young,* 8 Me. 14.

During the course of its business the Illinois Surety Company had executed bonds for certain contractors who had entered into contracts with the State of Ohio for the construction of certain highways, indemnifying the State and holding it harmless if the contractors failed to perform their contracts in accordance with the terms thereof. The company's bonds upon which claims of the State of Ohio accrued terminated by their own limitation, as shown by the record,—some within less than a year after the appointment of the receiver in this case. The demand of the claimant arose some time during the life of the bond,—that is, it existed prior to the appointment of the receiver but knowledge of evidence to prove it was not had until thereafter. The liability was not changed until after the date of the appointment of the receiver. The liability under the bond was created prior to the appointment of the receiver, on the execution and delivery of the bond. The cause of action accrued on that liability when there was a breach of the bond. The binding force of the contract between the company and claimant could no more be changed by the death of the company or the appointment of a receiver than could that of an individual surety. The State of Ohio was a creditor at the time of the appointment of the receiver

as the word "creditor" is usually understood in law. The relation of debtor and creditor between principal and surety commences at the date of the obligation by which the surety company becomes bound and not from the time it makes payment. (*Choteau* v. *Jones,* 11 Ill. 300.) The rights of the State of Ohio existed at the time the receiver was appointed. The mere fact that the extent of the obligation was not then determinable cannot, in reason, defeat the obligation itself. "We know of no definition of the word 'liability,' either given in the dictionaries or as used in the common speech of men, which restricts it to such as are absolute or excludes the idea of contingency. In fact, it is more frequently used in the latter sense than in the former, as when we speak of the liability of an insurer or a common carrier or the liability of accidents or to errors; and in Webster's Dictionary the word 'liable' is said to refer to a future possible or probable happening which may not actually occur." (*Cochran* v. *United States,* 157 U. S. 286.) This court has also held that the word "liable," as used in the policy then in question, "does not signify a perfected or fixed legal liability but rather a condition out of which a legal liability may arise. The word, as most frequently used, does not necessarily exclude the idea of a contingency." *Home Ins. Co.* v. *Peoria and Pekin Union Railroad Co.* 178 Ill. 64; see, also, to the same effect, *Benge's Admr.* v. *Bowling,* 106 Ky. 575; *White* v. *Green,* 105 Iowa, 176.

The question in this case is whether or not the claimant has a provable claim against the insolvent corporation and its receiver so as to charge the assets in the hands of the receiver. Whether the claim is or is not provable is an entirely different question from that of a limitation upon the time when it shall be exhibited and proved. The provability of a claim depends upon its nature and character. Whether it had been exhibited in time to share in the distribution of the assets depends upon the limitation of time

placed for the filing of claims, either by statutes of limitation or by order of a court of chancery. The State of Ohio, the claimant, had a contract with the insolvent surety company entered into long prior to the appointment of the receiver. This contract defined the rights and liabilities of the two parties. The surety company breached that contract,—whether before or after the appointment of the receiver is immaterial. It was breached while the contract was in full force and effect. Proof was made within the time limited by the court for exhibiting claims. In discussing what claims are provable the United States court of appeals says: "Equitable consideration must govern and the underlying ones are these: The assets of an insolvent corporation belong to its creditors. Although not, strictly speaking, a trust fund, they partake of the nature of one. The administration of the estate is for their benefit. Its purpose is to make an equitable distribution. Equality is equity. Debts and liabilities, present and future, certain and contingent, stand upon the same equitable basis. * * * A court of equity, then, in prescribing what claims shall take in the distribution of the estate of a corporation, must regard, on the one hand, the substantial right of all creditors to share in their debtor's property, and on the other the necessity for expeditious administration, and, giving due consideration to both, must make rules which are practicable as well as equitable." (*Pennsylvania Steel Co.* v. *New York City Railroad Co.* 198 Fed. 721.) In the same case the court said (p. 741): "Claims which, when presented within the time limited by the court for their presentation, are certain or are capable of being made certain by recognized methods of computation, should be allowed. Claims which are not then certain should be disallowed, because they afford no basis for making dividends. But there is no equitable reason why claims which are certain when presented and which are presented in time should have been certain at some arbitrary anterior period." Again, the Su-

preme Court of the United States has said: "But when the courts, without statute, take possession of all the assets of a corporation under a bill like the present and so make it impossible to collect debts except from the court's hands, they have no warrant for excluding creditors or for introducing supposed equities other than those determined by the contracts that the debtor was content to make and the creditors to accept. In order to make a distribution possible they must, of necessity, limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy, so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made." *Filene Sons Co.* v. *Weed, supra,* on p. 602. See similar reasoning in *In re Assignment of Sherry,* 101 Wis. 11, and *Chemical Nat. Bank* v. *Hartford Deposit Co.* 161 U. S. 1..

Somewhat analogous to the right to prove the claim here before the receiver are cases wherein is presented the provability of claims under the Administration act or under the Voluntary Assignment act. Under section 70 of the Administration act claims must be exhibited and proved within one year (formerly two years) from the date of the letters, and under section 10 of the Voluntary Assignment act claims must be exhibited within three months from the date of publication of notice by the assignee. Under these acts all claims that at the death of an intestate or at the date of making the voluntary assignment are contingent and unliquidated, as well as those that are absolute and liquidated, may be proven and may share in the distribution of the assets if the contingency has happened and the claim has become absolute and certain before the statutory limitation has run. *Union Trust Co.* v. *Shoemaker, supra; Gross* v. *Estate of Thornson,* 286 Ill. 185; see, also, *Suppiger* v. *Gruaz,* 137 Ill. 216; *Snydacker* v. *Swan Land Co.* 154 id. 220; *Joliet Nat. Bank* v. *O'Donnell,* 165 id. 32,

Counsel for appellant insists that this court has decided that the holder of a contingent claim is not a creditor of the estate of a deceased person, in *Chicago Title and Trust Co.* v. *Fine Arts Building,* 288 Ill. 142. We do not so read that decision. The court there said, among other things: "If his claim remains contingent during the whole of the year allowed for the exhibition of the claims against the estate he cannot participate in the distribution by the administrator." That decision, instead of holding as contended by counsel for appellant, rather tends to uphold the decision of the Appellate Court, that if the claim is due and can be proven any time within two years allowed by the statute here in question, or within such time as may be fixed by the court in charge of the receivership, it should be allowed.

Counsel earnestly insists that the decisions of this court in *Hynes* v. *Illinois Trust and Savings Bank,* 226 Ill. 95, *Gillett* v. *Chicago Title and Trust Co.* 230 id. 373, and *Blanchard Bro. & Lane* v. *Gay Co.* 289 id. 413, are not in harmony with the conclusions already stated. We do not think any of those decisions, fairly understood, involve the question here under consideration. The *Hynes case* was a creditors' bill to subject the assets of the defendant corporation to the payment of its debts and to enforce a stock liability under section 25 of the Corporation act, and the appointment of the receiver was an equitable attachment for the benefit of the creditors, of the assets of the company. One of the defendants, who was a heavy stockholder in the company and against whom there was a heavy indebtedness for unpaid stock, also held some of the negotiable bonds of the company, which after the appointment of the receiver he transferred to Hynes, his attorney, with full notice and knowledge of the facts, and the court held that Hynes received no better title to the bonds than Holmes had, and that the right of set-off existed against him. The *Gillett case* was very similar to the *Hynes case,* the question

being whether interest should be allowed on the claims of bondholders who had no lien on property but were simply contract creditors, after the court had taken possession of the assets of the company by the receiver. The *Blanchard case* was also a creditors' bill filed under section 25 of the Corporation act, and the defense set up was a prior proceeding brought by a stockholder against the company, under which a receiver was appointed, who sold the assets. It was there held that the court was without jurisdiction of the former proceeding, and that its action was void, following the decision in *People* v. *Weigley*, 155 Ill. 491, where it was held that a stockholder may not invoke the jurisdiction of a court of equity to take charge of all the company assets by a receiver and thus defeat the action of the creditors under section 25.

The present action is a suit by stockholders consented to by the company, and but for the fact that the surety company was organized under an act which makes it subject to the provisions of the Insurance Dissolution act it could not be dissolved by a court of chancery at the suit of stockholders. It is by virtue of section 2 of said act that the court has jurisdiction in the present proceeding to dissolve the surety company. The court has not yet entered such a decree of dissolution and could not enter it on the date when the receiver was appointed. It could not enter it until after due notice to all the parties interested, which would include all its creditors and the holders of its obligations and contracts of suretyship, guaranty and indemnity. The court had before it practically but one party, so that the situation that we have is the appointment of a temporary receiver to collect and conserve the assets for the benefit of all the interested parties,—not a part of them but all of them. There has been no decree yet as to who are all the creditors. The court, either with or without the consent of the officers of the insolvent corporation, could not terminate existing contracts or in any manner affect the

rights and remedies of the creditors and holders of obligations against the company or its property in the hands of the receiver. It made no difference whether the demands were liquidated or unliquidated, absolute or contingent. The receiver appointed derives his title from the company. He is its representative—its successor. He does not represent the creditors. The controversy in this case is between the claimant as a creditor on one side, and the company and its stockholders, represented by the receiver, on the other. No creditor of the company is opposing appellant's claim; no representative of a creditor is opposing it. Of course, it is true, as stated in some of the decisions already quoted from, that in order to make possible the distribution of the assets of such an estate as this, there must be a time fixed for such distribution,—if not by statute then by order of the court,—and that when so fixed contingent claims not due at such date must necessarily be excluded. Under the reasoning of this court in construing the provisions of the general Incorporation act and the Insurance Dissolution act, those decisions are in accord with the weight of authority in other jurisdictions except where the courts are construing special statutes in local jurisdictions. The Illinois statutes heretofore cited cannot be construed so as to fix the time for exclusion at less than two years from and after the date of dissolution of the corporation.

The holding of the Appellate Court that claim No. 371 should be allowed in the sum of $3281.35 is in our judgment correct, as is also the order that the decree of the superior court be reversed and the cause remanded, with directions to allow said claim and for further proceedings consistent with the views therein expressed with reference to approving claims Nos. 1080 and 1241.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*